A. D. WILSON, Appellee, v. CITY OF OTTUMWA, Appellant.

MUNICIPAL CORPORATIONS: Torts—Nuisance—Unauthorized
1  Nuisance by Private Parties. A city which has in no manner assumed jurisdiction or control over a natural watercourse within its corporate limits, is not liable in damages resulting from the acts of private parties in converting said watercourse into a nuisance by depositing offensive matter in said water-course without the knowledge or consent of the city authorities.

MUNICIPAL CORPORATIONS: Police Power—Manner of Exer-
2  cise—Abatement of Nuisance. Principle recognized that the statutory power of municipalities (Sec. 696, Code Supp., 1913) to abate nuisances must be exercised solely by means of duly enacted ordinances.

*Appeal from Wapello District Court.—*SENECA CORNELI.,
Judge.

THURSDAY, OCTOBER 18, 1917.

AN action for damages against the defendant city on account of the alleged maintenance of a nuisance. Judgment for plaintiff for $1,264.50.    Defendant appeals.— *Reversed.*

*Merrill C. Gilmore,* for appellant.

*Steck & Steck,* for appellee.

STEVENS, J.—What is now known as

1. MUNICIPAL
CORPORATIONS :
torts : nui-
sance : unau-
thorized nui-
sance by
private par-
ties.

Fairview Addition to the City of Ottumwa was platted in 1890 and annexed to said city in 1903. Prior to 1890, a creek or natural watercourse extended from the premises of plaintiff to a point northeast, for a distance of between a quarter and a half mile. About the year 1890, private owners of the property covered it, for a distance of about a block and a third, by a brick arch. As originally constructed, the brick arch was above Second Street, but in the same year was extended across Second Street by the board of supervisors. Prior thereto, there was a bridge across the waterway on this street.

There has been, and is now, a spring close to Fourth Street, somewhat more than a block above where the waterway enters the premises of plaintiff. The waterway in question is variously referred to in evidence and by counsel in argument as a "sewer," a "storm sewer," and a "waterway." It appears from the evidence that it extends for something over a block on Grand Avenue, and then is located on private property, except where it crosses streets and alleys of said city. It has always served as an outlet for water flowing from the spring, and surface waters accumulating and flowing therein along its course. The purpose of constructing the brick arch appears to have been to confine and control surface waters coming down from above in the

waterway, and to carry the same on to the southwest. But slight changes have been made in the streets crossing said waterway or adjacent thereto, but a catch basin has been constructed in Second Street over said waterway, for the purpose of providing an outlet for surface waters flowing down this and perhaps other streets. It is not claimed that the defendant city has in any way changed the watercourse or interfered therewith, except to construct a catch basin, as above stated, nor has the same in any way been made a part of the sewer system of defendant, nor have the surface waters discharged therein from the streets of defendant been in any way increased or altered since the annexation of Fairview Addition.

In two amendments to plaintiff's petition, it was claimed that some of the filth complained of was carried from the street in drains and waterways constructed by defendant through the catch basin into the waterway and upon the premises of plaintiff, but all allegations relating to said matters were withdrawn by plaintiff, and no claim is now made that the city, by ditches, drains or waterways constructed or improved by it, has contributed to the condition complained of. The claim of plaintiff is that, since the annexation of Fairview Addition to defendant city, modern residences have been erected on either side of Grand Avenue; and that, with the knowledge, consent and permission of the officers of defendant, numerous residents have constructed private drains from their sinks and water-closets in said residences and connected the same with said waterway, and there is discharged therefrom filth and fecal matter, which is carried to and deposited upon the premises of plaintiff, and becomes stagnant and emits foul and un healthful vapors and odors, and that same has so polluted the spring water, formerly valuable for watering stock and other purposes, as to render the same unfit therefor.

There is little conflict in the evidence as to the effect

upon the spring water of the fecal matter, or the condition claimed by plaintiff to exist upon the premises in question, but the defendant city denies that it at any time gave consent to anyone, or in any way knowingly permitted any person, to connect private drainage with said waterway; and that, if such use has been made thereof by the residents of said city, as claimed by plaintiff, it has been without the consent or permission of the defendant. As before stated, the defendant has at no time attempted to, in any way, connect private drainage therewith or make same a part of the sanitary sewerage system of said city. Plaintiff, some time before the commencement of this suit, gave notice to the officers of defendant of the conditions complained of, whereupon an investigation was made by said officers, which resulted in causing connections from two or three residences with said waterway to be destroyed; and at one time the defendant, at plaintiff's request, flushed the arched waterway. The size and manner of construction of the alleged arched sewer or waterway are not shown, except that same is constructed of brick in the form of an arch. Except as covered in the manner described, the waterway for the rest of its course is open, and filth from barns and other buildings, and from other sources along its course, may be carried into the same by surface water without obstruction, and on through the arched portion thereof.

If the term "storm sewer" is applicable to that portion covered by the brick arch, it is solely on account of said arch. It does not appear that the waterway was in any way changed or altered by the construction thereof. It is not a sewer, as that term is ordinarily understood, and as it is used in the decisions cited. *City of Durham v. Eno Cotton Mills*, (N. C.) 57 S. E. 465; *Mound City Land & Stock Co. v. Miller*, (Mo.) 70 S. W. 721; *State Board of Health v. Mayor of Jersey City*, (N. J.) 35 Atl. 835. It is

rather, as appears from the foregoing statement, a natural drain or watercourse, by which the surface waters accumulating in the vicinity thereof are carried away to the southwest and onto the premises of plaintiff.

No evidence was offered to show that defendant granted permission or consented that residents on Grand Avenue or elsewhere might connect private drainage with said waterway, or make same an outlet for waste matter from the residences adjacent thereto, or that the city had knowledge that same was so used, except such as came from the appearance of fecal and other foul matter along the course of said waterway and in the vicinity of plaintiff's residence. The evidence does not show who, if anyone, maintained sewer connection with the waterway. Authorities are cited by appellee to the effect that it is the duty of a municipality to maintain and keep its sewers in repair and in proper working order, to prevent the same from becoming a source of discomfort and injury to others. None of the cited authorities, however, go so far as to hold that a duty is imposed upon the city to prevent private parties from creating a nuisance upon private property, or polluting water flowing in a natural watercourse over which the city has assumed no other control than follows from the location thereof within the corporate limits of said city, and which has not in some way been made a part of the sanitary sewerage system of such city, or used in connection therewith or as a part thereof, or into which the city has provided no outlet for street drainage not in the ordinary course of nature tributary thereto. The following concession appears in the abstract:

"It was conceded by defendant that the brick archway, which is referred to as the brick sewer in this case, was constructed by Mr. Stevens and his associates, owners of the land now included in Fairview Addition to Ottumwa, in

1890, in order to take care of the water in the natural water-course, running through what is now Grand Avenue, and that the spring water referred to in the plaintiff's evidence flowed through the brick sewer."

The condition of the waterway appears to have been the same at the times complained of as when Fairview Addition was annexed to defendant city. The court submitted the case to the jury upon the theory that the defendant had negligently permitted residents along the waterway to connect private sewers therewith and to discharge offensive matter therein as above stated, and also permitted filthy water, soapsuds and other objectionable matter to be discharged into said waterway from the streets, through the catch basin on Second Street; but the allegations of plain-tiff's petition as to the latter were withdrawn by plaintiff.

In the absence of evidence from which it may be inferred that the defendant has in some way adopted the waterway in question as a part of its sewer system, or as an outlet therefor, or by some affirmative act or permission given consent to residents residing in the vicinity thereof to construct and connect private drainage therewith, or has in some way contributed to the alleged nuisance complained of, it has violated no duty owed by it to plaintiff, and therefore is not liable for damages resulting from the alleged wrongful acts of residents upon the street or along the course of said waterway. *Hines v. City of Nevada*, 150 Iowa 620; Dillon on Municipal Corporations, Section 1736; *Knostman & Peterson Furniture Company v. City of Davenport*, 99 Iowa 589.

The defendant city owed no duty to plaintiff to prevent the water from the spring in question from becoming polluted and unfit for use, or to abate a nuisance to which it in no wise contributed, or for which it was not in some way responsible. The defendant, so far as the record before us

shows, has in no way, by any act of its officers or employes, contributed to or caused the conditions complained of, and cannot be compelled to respond in damages on account thereof. *Finley v. City of Kendallville,* (Ind.) 90 N. E. 1036; *Collins v. City of Waltham,* (Mass.) 24 N. E. 327.

2. MUNICIPAL
CORPORATIONS:
police power:
manner of ex-
ercise: abate-
ment of
nuisance.

It is contended by appellee that Section 696, Supplement to the Code, 1913, authorizes municipal corporations to abate nuisances when necessary to prevent injury or annoyance from anything dangerous or offensive; but this power can be exercised only in accordance with ordinances regularly and legally adopted. *City of Sioux City v. Simmons Hardware Co.,* 151 Iowa 334; *City of Georgetown v. Commonwealth,* (Ky.) 73 S. W. 1011; *Mayor, etc., of City of Chattanooga v. Reid,* (Tenn.) 53 S. W. 937; *Butz v. Cavanagh,* (Mo.) 38 S. W. 1104; *Calwell v. City of Boone,* 51 Iowa 687; *McFadden v. Town of Jewell,* 119 Iowa 321; *Ogg v. City of Lansing,* 35 Iowa 495; *City of Ottumwa v. Chinn,* 75 Iowa 405; *Board of Councilmen of City of Frankfort v. Commonwealth,* (Ky.) 75 S. W. 217; *Miller & Meyers v. City of Newport News,* (Va.) 44 S. E. 712; *Joplin Consolidated Min. Co. v. City of Joplin,* (Mo.) 27 S. W. 406; *Robinson v. City of Danville,* (Va.) 43 S. E. 337; *Town of Monticello v. Fox,* (Ind.) 28 N. E. 1025; *Knostman & Peterson Furn. Co. v. City of Davenport,* 99 Iowa 589; *Hull v. Town of Roxboro,* (N. C.) 55 S. E. 351 (12 L. R. A. [N. S.] 638); *Crystal Spring Brook Trout Hatchery Co. v. Village of Lomira,* (Wis.) 162 N. W. 658. It does not appear that ordinances have been adopted by defendant for the purpose of carrying out the provisions of this statute.

At the close of plaintiff's testimony, the defendant moved the court to direct a verdict in its favor. The motion should have been sustained. The evidence wholly failed

to establish either negligence or action upon the part of defendant causing, or contributing in any way to, the nuisance in question.

For the reasons pointed out, the judgment of the lower court is—*Reversed*.

GAYNOR, C. J., WEAVER and PRESTON, JJ., concur.