CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY, Respondent, vs. RAILROAD COMMISSION OF WISCONSIN and another, Appellants.

*June 5—June 24, 1929.*

For the appellant Railroad Commission there was a brief by the *Attorney General* and *Suel O. Arnold,* assistant attorney general, and oral argument by *Mr. Arnold.*

344

For the respondent there was a brief by *Lees & Bunge* of La Crosse, attorneys, and *J. C. James* and *Kenneth F. Burgess,* both of Chicago, of counsel, and oral argument by *Andrew W. Lees.*

CROWNHART, J. The appellant Henry is and was the owner, for five years past, of certain upland which, prior to 1885, was drained of surface waters through a natural channel across the point in the railroad embankment where the Railroad Commission directed the opening by the order held void by the trial court. The evidence is sufficient to sustain the finding of the commission that a portion of the waters discharged from the appellant's upland passed through a natural channel at such point prior to 1885. The railroad company, in 1885, built its road over such channel and filled the same by the creation of an embankment several feet in height, and turned the waters from such natural channel easterly along such embankment to a point about 800 feet easterly, where it built a bridge and allowed such waters to pass thereunder. In the course of time the new channel was partially filled in and raised by the deposits carried by the waters from the upland, so that the drainage of appellant's lands is to some extent held back on his land, to his damage.

Appellant's land is of value not exceeding $1,500. The cost of the opening in the embankment and the bridging of the same will be about $10,000. Between the present drainage channel and the railroad, and running parallel with the railroad, has been at all times a turnpiked highway. Originally there was a bridge in the highway at the point where the original channel crossed the same, under which the water flowed in its natural channel, but for many years the bridge has been removed and the channel filled up, so that now, to restore the waters to the old channel, it is necessary not only to make an opening in the railroad embankment, but also an opening in the highway. The making of the necessary open-

ing in the highway, and bridging the same, would cost about $4,000. The Railroad Commission has no authority to compel the change in the highway, and the proposed change in the railroad embankment would be entirely futile without the change in the highway.

Sec. 88.38 of the Statutes provides:

"(1) Whenever any county, town, city, village or railway company shall have heretofore constructed and now maintains or hereafter shall construct and maintain any public highway or road grade through, over and across any marsh, lowland or other natural depression over or through which surface water naturally flows and percolates, and the stopping of the said flow and percolation of said water by said highway or road grade causes any crop or land to be flooded, watersoaked or otherwise damaged, such county, town, city, village or railway company shall construct, provide and at all times maintain a sufficient ditch or ditches, culverts or other outlets to allow the free and unobstructed flow and percolation of said water from said lands, and to prevent said lands from becoming flooded, watersoaked or otherwise damaged by said water. Provided, however, that the foregoing shall not apply to public highways or road grades now or hereafter used to hold and retain water for cranberry purposes.

"(2) Any county, town, city, village or railway company which shall fail to provide such necessary ditches or culverts or other outlets shall be liable for all damages caused by reason of such failure or neglect."

Sec. 88.40 provides:

"In case of the failure or refusal of any railroad company to comply with any of the provisions of sections 88.38 and 88.39, the person, firm or corporation or the town, village or city aggrieved thereby may file a complaint with the railroad commission setting forth the facts. The commission shall investigate and determine the matter in controversy, in accordance with the provisions of sections 195.01 to 195.54, inclusive, and any order it shall make in said proceeding shall have the same force and effect as an order in any other proceeding properly begun under and by virtue of the provisions of said sections."

The trial court found that sec. 88.40 is void because it attempts to confer judicial power upon the commission. The statute clearly does no more than to require the commission to find the facts and apply the rule of the statute to the facts, by its order. The statute cannot be held void for the reason given by the trial court. The statute, when reasonably interpreted and correctly applied, is reasonable and valid. The statute is intended to meet the conditions found in constructing highways and railroads in a reasonable and practical manner. Necessarily there must be some change in such cases in the natural discharge of waters. The statutes of this state and the decisions of this court clearly recognize that fact. The waters in question are surface waters, recognized at common law as a common enemy, which might be held back by the owner of lower lands by embankments resulting in changing their natural discharge. 27 Ruling Case Law, p. 1143; *Pettigrew v. Evansville,* 25 Wis. 223; *Vick v. Strehmel,* 197 Wis. 366, 222 N. W. 307. Secs. 88.38 and 88.40 were intended to give a measure of relief to the owner of the upland from the rule of the common law. The statute therefore provides that whenever the building of highways or railroads results in causing the uplands to be flooded or water-soaked, the party causing the damage shall provide suitable ditches and culverts to allow the free and unobstructed flow of said waters from said lands. The statute does not require that the waters shall be permitted to discharge in their natural condition, but that suitable provision shall be made for their discharge. The railroad company made such provision when it built its road, and for forty years there was no complaint. It is by no means apparent that the original channel would not have filled in and been diverted if the water had been allowed to flow in the natural channel. In fact the course of the waters has changed at a point about 700 or 800 feet to the north of the railroad track so that they flow in time of flood diagonally across appellant's

field directly to the bridge. It is not shown by the evidence that this result would not have been the same if the original channel had not been filled by the railroad company. If the flow is obstructed at the bridge by a filling in of the channel, it may be that the railroad company should be required to remove such obstruction. But that question is not before us. Sub. (2), sec. 88.38, Stats., gives appellant a remedy if he has been wrongfully damaged. Under all the facts as found by the court and sustained by the evidence, we hold that the order of the commission is unreasonable and void for that reason.

*By the Court.*—The judgment of the circuit court vacating the order of the Railroad Commission is affirmed.