GIBEAU, Appellant, vs. TOWN OF PRATT, Respondent.

*March 7—April 5, 1950.*

For the appellant there were briefs by *S. P. Rigler* of Rice Lake, attorney, and *Hill, Miller & Hill* of Baraboo of counsel, and oral argument by *James H. Hill, Jr.*

For the respondent there was a brief by *Norlin & Spears* of Washburn, and oral argument by *Walter T. Norlin.*

GEHL, J.   The plaintiff owns a farm which abuts on the south an east-and-west highway which from 1919 until 1924 had been a part of the state highway system.   In 1922 it became a town road.   The plaintiff's land lies at a lower level than the land south of the road and the natural drainage of surface water is from the south to the north onto the plaintiff's land.

In 1922, a ditch was constructed on the south side of the road and a culvert installed across it at its low point in that area and opposite plaintiff's land.   The ditch extends westerly along the south side of the road a distance of about six hundred feet to a north-and-south town road which intersects the east-and-west road.   Another culvert was installed at about the same level as the first-named culvert under the north-and-south road at or about the point of intersection of the two roads.   The ditch was intended to and for some time did carry surface water to the west away from the plaintiff's land and through the culvert under the north-and-south road.

It was shown that between 1944 and 1948 weeds, grass, and debris were permitted to accumulate in the ditch so as to prevent the water from traveling westerly toward the culvert under the north-and-south road.   As a result some of the surface water reached plaintiff's land through the first-named culvert.

This action was brought for the recovery of damages resulting, as plaintiff claims, from the diversion of surface water caused by the town's failure to keep the ditch open so as to permit it to continue to carry the surface water to and through the culvert under the north-and-south road.

Plaintiff concedes that, unless he is provided relief by the provisions of sec. 88.38, Stats., under the rule of *Merkel v. Germantown*, 120 Wis. 494, 98 N. W. 210, he has no action for damages on account of the diversion by a municipality of surface water by the construction of highways. But he contends that the statute affords him a remedy.

Sec. 88.38, Stats., provides:

"(1) Whenever any county, town, city, village, or railway company shall have heretofore constructed and now maintains or hereafter shall construct and maintain any public highway or road grade through, over, and across any marsh, lowland, or other natural depression over or through which surface water naturally flows and percolates, and the stopping of the said flow and percolation of said water by said highway or road grade causes any crop or land to be flooded, water-soaked, or otherwise damaged, such county, town, city, village, or railway company shall construct, provide, and at all times maintain a sufficient ditch or ditches, culverts, or other outlets to allow the free and unobstructed flow and percolation of said water from said lands, and to prevent said lands from becoming flooded, watersoaked, or otherwise damaged by said water. . . .

"(2) Any county, town, city, village, or railway company which shall fail to provide such necessary ditches or culverts or other outlets shall be liable for all damages caused by reason of such failure or neglect."

The trial judge found in effect—obviously from the fact that the natural course of drainage is from south to north to plaintiff's land—that neither the construction of the east-and-west road nor the maintenance of the culvert under it diverted surface water from its natural course onto plaintiff's land.

The statute permits recovery where the *stopping* of the flow of water is caused by highway construction or maintenance. Surface waters now reaching plaintiff's land do so just as they did before construction of the highway. There is no stopping of the natural flow. The statute was "intended to

give a measure of relief to the owner of the upland from the rule of the common law." *Chicago, B. & Q. R. Co. v. Railroad Comm.* 199 Wis. 342, 346, 226 N. W. 286.

The most that can be said of defendant's failure to maintain the ditch so as to permit it to continue to carry surface water to the west is that such failure restored the flow to its original course and that which it took before the highway was built.

"A municipality, after it has made provision by a drain or sewer for carrying off surface water, may discontinue or abandon the drain or sewer if the landowners are thereby left in no worse condition with reference to the surface water setback than if the sewer had never been constructed." *Peck v. Baraboo,* 141 Wis. 48, 53, 122 N. W. 740.

Plaintiff failed to show that more water now reaches his land than did before construction of the road.

*Huerth v. Prairie du Sac,* 246 Wis. 25, 16 N. W. (2d) 422, cited by plaintiff is not in point. There plaintiff's lands were uplands to which surface waters had been diverted by the construction of a highway. The facts presented a situation for the application of sec. 88.38, Stats. Here, as has been pointed out, plaintiff's lands are lowlands.

*By the Court.*—Judgment affirmed.