### PATRICK GANNON *vs.* JOHN HARGADON.

The owner of land may lawfully occupy and improve it in such manner as either to prevent surface water which accumulates elsewhere from coming upon it, or altering the course of surface water which has accumulated thereon or come upon it from elsewhere; although the water is thereby made to flow upon the adjoining land of another, to his loss.

TORT to recover damages for turning a stream of water so that it flowed upon the plaintiff's close in West Newton.

At the trial in the superior court, before *Brigham,* J., the evidence tended to show that the defendant owned a lot of land lying to the west of the plaintiff's ; that along the easterly line of the defendant's lot there was a way, which extended further to the north ; that on the west side of the way, and north of the

defendant's lot, a ditch was dug in 1863 which extended down to within a few feet of the defendant's lot; that a few feet below the northerly line of the defendant's lot there was a low place in the way, below which deèp ruts had been made; that in March 1863 the melting of the snow and the spring rains caused a considerable flow of surface water from the land to the north of the defendant's lot, through the ditch, and over the way and through the ruts upon the defendant's lot; and that the defendant thereupon placed turfs in the ruts just below the low place in the way, and upon his own land, for the purpose of protecting the way from injury, and thereby caused the water to flow off upon the plaintiff's land.

The defendant asked the court to instruct the jury as follows: " If the defendant placed sods in the cart ruts upon the way over his own land from time to time as the ruts were made by the passing of the cart, and he did this merely to prevent the water from making channels of such ruts, and gullying, washing away and injuring said way and the land of the defendant, and such water was not that of a watercourse but merely surface water caused by the melting of snows and the fall of rains in the spring, and flowed on to the defendant's land from land above his own, and if in consequence of the placing of said sods the said water which would otherwise have run down said ruts was diverted upon the plaintiff's land, the defendant is not liable therefor. The plaintiff had no right that the ruts made on the defendant's land should be kept open."

The judge declined so to rule, and instructed the jury as follows: " The plaintiff and defendant, being conterminous proprietors, had each the right to develop, improve and enjoy his own estate ; and if, as an incident to the exercise of this right, the estate of the other was injured, he would have no legal remedy for such injury. Each, on his own estate, might do acts to prevent the other's exercise of this right from being injurious to him ; and if in sc doing the other's development, improvement and enjoyment of his estate was restricted, for such restrictions, if injurious, he vould have no legal remedy. But neither would have the right to transfer or divert a cause of injury to

him, arising from the exercise of the right stated, by the other to another conterminous proprietor.

" To apply these principles to the present case. The defendant, for the purpose of repairing and enjoying the way over his estate, had a right to exclude surface water from his estate and from his way, which flowed from conterminous estates ; and if as an incident to the exercise of this right such surface water flowed upon the plaintiff's land, the plaintiff has no remedy against the defendant; if the defendant failed to exercise this right, and the consequence of this failure was that water flowed from estates conterminous to that of the defendant upon the defendant's land, and thence upon the plaintiff's land, to his injury, he would have no remedy against the defendant; but if surface water flowing from land conterminous with the land of the defendant upon the defendant's land, which water in its natural course would not have flowed upon the plaintiff's land, was by the act of the defendant diverted thence upon the plaintiff's land to his injury, the plaintiff would have a remedy against the defendant for such injury, notwithstanding the act of diverting such surface water by the defendant was an act of repair of his way, and was for the purpose of preventing said way from being injured by such surface water."

The judge further instructed the jury that " the defendant could have prevented the water from coming upon his own land, and if in doing so he had diverted the water upon the land of the plaintiff, he would not be liable for so doing; but if the defendant suffered the water to flow in upon his land, then the case was different, and having once suffered the water to come upon his land, if he diverted it upon the land of the plaintiff, to his injury, where it would not have gone in its natural course, he was liable; and if the turfs placed in the ruts by the defendant caused water thus to flow upon the plaintiff's land which but for said turfs would not have gone there, then the defendant is liable."

The jury returned a verdict for the plaintiff, and the defendant alleged exceptions.

*D. E. Ware,* for the defendant.

*J. Rutter,* for the plaintiff.

BIGELOW, C. J.   It seems to us that the instructions for which the defendant asked should have been given, and that those under which the case was submitted to the jury were not in accordance with the principles recognized and adopted in cases recently adjudicated by this court.   The right of an owner of land to occupy and improve it in such manner and for such purposes as he may see fit, either by changing the surface or the erection of buildings or other structures thereon, is not restricted or modified by the fact that his own land is so situated with reference to that of adjoining owners that an alteration in the mode of its improvement or occupation in any portion of it will cause water, which may accumulate thereon by rains and snows falling on its surface or flowing on to it over the surface of adjacent lots, either to stand in unusual quantities on other adjacent lands, or pass into and over the same in greater quantities or in other directions than they were accustomed to flow.   *Luther* v. *Winnisimmet Co.* 9 Cush. 171.   *Flagg* v. *Worcester,* 13 Gray, 601 *Dickinson* v. *Worcester,* 7 Allen, 19.   The point of these decisions is, that where there is no watercourse by grant or prescrip tion, and no stipulation exists between conterminous proprietors of land concerning the mode in which their respective parcels shall be occupied and improved, no right to regulate or control the surface drainage of water can be asserted by the owner of one lot over that of his neighbor.   *Cujus est solum, ejus est usquè ad cælum* is a general rule, applicable to the use and enjoyment of real property, and the right of a party to the free and unfettered control of his own land above, upon and beneath the surface cannot be interfered with or restrained by any considerations of injury to others which may be occasioned by the flow of mere surface water in consequence of the lawful appropriation of land by its owner to a particular use or mode of enjoyment.   Nor is it at all material, in the application of this principle of law, whether a party obstructs or changes the direction and flow of surface water by preventing it from coming within the limits of his land, or by erecting barriers or changing the level of the soil, so as to turn it off in a new course after it has

come within his boundaries.   The obstruction of surface water or an alteration in the flow of it affords no cause of action in behalf of a person who may suffer loss or detriment therefrom against one who does no act inconsistent with the due exercise of dominion over his own soil.   This principle seems to have been lost sight of in the instructions given to the jury.   While the right of the owner of land to improve it and to change its surface so as to exclude surface water from it is fully recognized, even although such exclusion may cause the water to flow on to a neighbor's land, it seems to be assumed that he would be liable in damages, if, after suffering the water to come on his land, he obstructed it and caused it to flow in a new direction on land of a conterminous proprietor where it had not previously been accustomed to flow.   But we know of no such distinction.   A party may improve any portion of his land, although he may thereby cause the surface water flowing thereon, whencesoever it may come, to pass off in a different direction and in larger quantities than previously.   If such an act causes damages to adjacent land, it is *damnum absque injuria.*   On this point the instructions were clearly erroneous.

*Exceptions sustained.*